IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ZENA PHILLIPS,

    **Plaintiff,**

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA, et al.,

    **Defendants,**                                 No. 11-cv-0058-DRH

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

### I. Introduction and Background

Before the Court is defendant The Prudential Insurance Company of America's motion to dismiss plaintiff Zena Phillips' putative class action complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 27). Plaintiff opposes the motion (Doc. 38). For the following reasons, the Court grants the motion to dismiss.[1]

---

[1] Affiliated plaintiff's counsel have filed two other putative class actions with similar allegations, both of which have been dismissed on the pleadings. In *Garcia v. Prudential Life Insurance Company of America,* No. 08-5756 (JAG) (D.N.J.) plaintiff alleged that Prudential engaged in the practice of delaying the payment of life insurance benefits and holding them in their General Investment Account so that it could invest and make profits undisclosed to the beneficiaries. The complaint stated causes of action for breach of contract, breach of fiduciary duty, and unjust enrichment. The Court dismissed the claims on the merits without prejudice holding that the insurance policy permitted the use of an Alliance Account for payment of the benefits and that the beneficiary agreed in writing to this method. It also held that Prudential was permitted to hold the benefits in its General Investment Account, and the relationship between Prudential and the account owner was a debtor-creditor relationship which did not involve a fiduciary duty. The plaintiff then filed a similar petition in Nevada state court on behalf of a Nevada-only class. *Garcia v. Prudential Life Insurance Company of America,* No. CV10-01045 (Nev. 2d Dist. Ct.). The complaint asserted claims for breach of fiduciary duty, breaches of duties

Plaintiff, a resident of the state of Illinois, is one of the beneficiaries of an insurance policy purchased by her deceased fiancé Michael S. Strang (Doc. 18). The policy stated that Prudential would pay the beneficiary "promptly" upon receipt of due proof that the beneficiary died in the term period (Doc. 28–4). It also provided that the beneficiary "may choose to have any death benefit paid in a single sum" (Doc. 28–4, p. 13). Also, under the policy, the insured could choose from five other optional methods of settlement in the form of installment payments for a fixed period, life income, interest payment (the Alliance Account), installments for a fixed amount, and non-participating income. *Id*. When Strang died, plaintiff filed a claim under the policy, and Prudential determined that she was entitled to $103,053.20 (Doc. 28). Thereafter, she received a Claim Form which stated that "unless you elect an alternative settlement option or select payment option, eligible death benefit claims will be paid by way of the Alliance Account settlement option." (Doc. 28-3, p. C21). It also stated that "[i]f you would like to select an alternative settlement option, indicate your settlement option below (as described in the Settlement Options brochure)." *Id.* Plaintiff left this space blank. (Doc. 28). Following the submission of her claim form, plaintiff received documents that confirmed the selection of her Alliance Account.[2]  *Id.* She also received a checkbook to access the account and was

---

arising from a confidential relationship, and breach of the covenant of good faith and fair dealing. The Court dismissed the complaint with prejudice on the basis of issue preclusion.

[2]Plaintiff received the documents confirming the terms of the new Alliance Account, the account number and the interest rate (3% interest rate, twice the 1.5% minimum guaranteed under Settlement Option 3), and other pertinent information.

informed that she could "withdraw the entire amount immediately—or over time." (Doc. 28–3, pp. C2, C1).

On December 10, 2010, plaintiff brought this putative Illinois-only class action against Prudential Financial, Inc. ("PFI"), in the Williamson County, Illinois Circuit Court (Doc. 28–3). Plaintiff asserts claims for breach of contract (Count I), breach of statute (Count II), breach of fiduciary duty (Count III), and breach of duties arising from a special, confidential relationship (Count IV). These claims stem from allegations that PFI delays the payment of life insurance benefits and invests the proceeds without disclosing to the beneficiaries the identity of the account in which they are being invested, the types of investments in which the proceeds are placed, and the interest or earnings generated by these investments.

On January 21, 2011, PFI filed a notice of removal based on diversity jurisdiction, 28 U.S.C. § 1332 (Doc. 2). On February 28, 2011, PFI moved to dismiss the original complaint in its entirety (Doc. 27). Thereafter, Plaintiff filed an amended complaint on March 18, 2011, dropping PFI as a defendant and substituting The Prudential Insurance Company of America and Pruco Life Insurance Company (collectively "Prudential") (Doc. 18). The amended complaint made no substantive changes in the allegations or causes of action. The Court now turns to address the merits of the motion to dismiss.

## II. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency

of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. V. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, a complaint must establish a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, plaintiffs must produce more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The Court may also consider documents apart from the complaint itself if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Ultimately, "[w]here the allegations of a pleading are inconsistent with the terms of a written contract attached as an exhibit, the terms of the latter, fairly construed, must prevail..." *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523. 529 (7th Cir, 1999) (quoting *Graue Mill Development Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 991 (7th Cir. 1991)) (citations omitted).

### III. Analysis

*A. Breach of Contract*

Plaintiff alleges that Prudential breached the terms of the form policy in that it was required to distribute the proceeds to her in a single sum and instead it

established the Alliance Account which she could access through a checkbook provided to her. She maintains that pursuant to the Policy, defendants were required to pay the death benefit to her in a single sum.[3]

When dealing with an insurance policy, the same rules of construction that are applicable to other types of contracts apply. *Nicor, Inc. v. Associated Ele. & Gas Ins. Services Ltd.*, 223 Ill. 2d 407, 416 (Ill. App. Ct. 2006). To plead a cause of action for breach of contract, a plaintiff must allege the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant injury to the plaintiff. *Gonzalzes v. Am. Exp. Corp.*, 315 Ill. App. 199, 206 (Ill. App. Ct. 2000). Prudential does not dispute the existence of the first two elements, however, it argues that it did not breach the contract and that plaintiff has not suffered an injury. The Court agrees that plaintiff has not alleged sufficient facts supporting the existence of a breach on the part of defendants nor a resultant injury to plaintiff.

---

[3]The cases relied on by plaintiff are distinguishable for various reasons. *Mogel v. UNUM Life Insurance Co.*, 547 F.3d 23 (1st Cir. 2008), was an ERISA action and imposed a statutory fiduciary duty and did not involve a claim for breach of contract or any state law claims. Further, in that action the beneficiaries did not elect to change the manner in which they would receive their death benefits; i.e. plaintiffs' "lump sum" election was not modified by the claim form. In *Keife v. Metropolitan Life Ins. Co.*, 2011 WL 1599600 (Dist. Nev. 2011), the district court found that since the policy provided that it was the "entire agreement between the parties" the insurer was prohibited from issuing policy booklet or insurance certificate altering or amending the policy. In *Lucy v. Prudential Ins. Co of America*, 783 F.Supp.2d 207 (D. Mass. 2011), the allegations arise out of the procedure of distribution of the lump-sum payout via the Alliance Account. There, the complaint alleged that if the insured elected a "lump-sum payment," the beneficiary(ies) received the funds through an Alliance Account rather than the traditional single check for the full amount of the insurance proceeds.

In the complaint, plaintiff alleges that "[b]ecause….[insured] had not made a request for an optional mode of settlement under the terms of the policy, Prudential was required to pay the death benefit to his beneficiary…in a <u>single sum</u>" (Doc. 18). However, the policy actually states:

> You may choose to have any death benefit paid in a single sum *or under one of the optional modes of settlement described blow.* (emphasis added)  If the person who is to receive the proceeds of this contract wishes to take advantage of one of these optional modes, we will be glad to furnish, on request, details of the options we describe below or any others we may have available at the time the proceeds become payable."

(Doc. 28-4, p. D13).  Further, as to what constitutes the contact, the Policy provides in part:

> "This policy and any attached copy of an application, including an application requesting a change, form the entire contract…"

(Doc. 28-4, p. D7).

Here, upon the death of the insured, plaintiff received a Claim Form that referred to a Settlement Options brochure which included the Alliance Account as one of the "optional modes of settlement" mentioned in the Policy (Doc. 28-4, p. D13).  Further, Section 3 of the Claim Form stated that "[u]nless you elect an alternative settlement option or select another payment option, eligible death claim benefits will be paid by way of the Alliance Account settlement option." (Doc. 28–3, p. C21).  Taken together, the two documents, the documents and Claim Form, make it clear that receiving payment in a single sum was one of several methods of

distribution and that the method of delivery would default to the Alliance Account unless the beneficiary affirmatively chose another option.[4]

Here, plaintiff executed the Claim Form without designating that she wished to receive the proceeds in a single sum.[5] When she left the Claim Form blank without specifically stating that she wished to receive the benefits she was due under the Policy, she changed the method by which she would receive those benefits from a single sum to an Alliance Account. There can be no breach of contract where the contract, by its express terms, allowed plaintiff to elect to receive the benefits in a different manner than specified by Strang. Prudential thereby distributed the insurance proceeds in accordance with the contract.

Plaintiff contends, however, that the Alliance Account was fictitious and that the proceeds were concealed in Prudential's General Investment Account ("GIA"). This argument lacks merit as the Illinois statute expressly makes clear that "such company shall not be required to segregate funds so held but may hold them as part of its general company assets." 215 ILCS 5/241. Therefore, plaintiff's analogy that

---

[4]215 ILCS 5/241 permits an insurer to set up this sort of account. Section 5/241 provides in part: "[a]ny domestic life company shall have the power to hold the proceeds of any policy issued by it under a trust or other agreement upon such terms and restrictions as to revocation by the policyholder and control by beneficiaries, and with such exemptions from the claims of creditors of beneficiaries other than the policyholder as shall have been agreed to in writing by such company and the policyholder. Upon maturity of a policy in the event the policyholder has made no such agreement, the company shall have power to hold the proceeds of the policy under an agreement with the beneficiaries. Such company shall not be required to segregate funds so held but may hold them as part of its general company assets. A foreign or alien company, when authorized by its charter or the laws of its domicile, may exercise any such powers in this State."

[5]Plaintiff does not dispute that she signed the Claim Form and certified that she specifically agreed that unless she chose another settlement option or payment option, "eligible death claim benefits will be paid by way of the Alliance Account settlement option."

Prudential concealed the proceeds in its GIA in the same way a lawyer might co-mingle client assets with his or her own account is inapposite. While legal ethics may require a lawyer to hold client funds in a separate account, Illinois law permits an insurer to hold insurance proceeds as a part of its general company assets. As a result, there is no breach of contract or resultant injury to the plaintiff. Thus, the Court grants defendant's motion to dismiss Count I of the complaint for failure to state a claim for breach of contract.[6]

*B. Breach of Statute*

Plaintiff's second claim alleges that Prudential delayed making payment through the creation of Alliance Account and that this resulted in a delay that was "vexatious and unreasonable" pursuant to 215 ILCS 5/155.[7] Section 155 was enacted by the legislature "to provide a remedy to an insured who encounters difficulties when an insurer withholds policy benefits." *Richardson v. Illinois Power Co.*, 217 Ill. App.3d 708, 711 (Ill. App. 1991); *Bedoya v. Illinois Founders Ins. Co.*, 293 Ill. App.3d 668, 679 (Ill. App. 1997). Section 5/155 provides an extra-contractual remedy for policyholders whose insurer's refusal to recognize liability

---

[6] The Court does not need to address defendants' other arguments in support of the motion as to this claim.

[7] Section 5/155 states that "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts..."

and pay a claim under a policy." *Cramer v. Insurance Exchange Agency,* 174 Ill.2d 513, 519 (Ill. 1996). The purpose is to prevent insurance companies "with their superior financial resources" from dragging out claims in order "to discourage claimants." *Verbaere v. Life Investors Ins. Co.,* 226 Ill.App.3d 289, 300 (Ill. App. 1992).

Section 155 does not create a duty to settle, and a delay in settling a claim does not violate the statute if the delay results from a *bona fide* dispute regarding coverage. *Valdovinos v. Gallant Insurance Co.*, 314 Ill.App.3d 1018 1021 (Ill. App. 2000). However, an insurer's conduct may be vexatious and unreasonable if the insurer refuses to settle and proceeds to arbitration or trial without presenting a a *bona fide* defense. *Buais v. Safeway Ins. Co.*, 275 Ill.App.3d 587, 591 (Ill. App. 1995).

Whether an insurer's alleged delay in paying a claim is vexatious and unreasonable is a factual question for the trial court and no single factor alone is controlling. *Miller's Mut. Ins. Ass'n of Illinois v. House,* 286 Ill.App.3d 378, 387 (Ill. App. Ct. 1997). A trial court must consider the totality of the circumstances including the insurer's attitude, whether the insured was forced to sue to recover, and whether the insured was deprived of the use of his or her property. *Buais v. Safeway Ins. Co.*, 275 Ill. App. 3d at 591; *Kohlmeier v. Shelter Ins. Co.*, 170 Ill. App. 3d 643, 659 (Ill. App. 1988). To state a claim under section 155, an insured cannot merely allege that the insurer's conduct was vexatious and unreasonable, but that she or he must include a modicum of factual support. *Bedoya*, 293 Ill.App.3d at 679.

Here, the Court finds that this claim fails as a matter of law based on the same reasons that the Court found that Prudential did not breach the contract as Prudential did not fail to settle the claim nor was there any delay that could be described as "vexatious and unreasonable." After plaintiff submitted the Claim Form, Prudential opened an "Alliance Account" in her name at which point plaintiff had complete access to the proceeds. As a result, this disbursement method was not sufficiently different from payment by check. Furthermore, based on the fact that the Alliance Account was promptly established in the plaintiff's name and that it gave her complete access to the funds, it cannot be said that Prudential acted in bad faith in an attempt to "drag out the claims process" to discourage plaintiff from collecting. *Verbaere v. Life Investors Ins. Co.,* 226 Ill. App. 3d 289, 300 (Ill. App. Ct. 1992). Therefore, plaintiff's claim that Prudential breached § 155 fails as a matter of law. Thus, the Court grants Prudential's motion to dismiss Count II.

*C. Breach of Duties Resulting from a Fiduciary Or Confidential Relationship*

Plaintiff next contends that Prudential breached a duty arising from a fiduciary or confidential relationship by investing the proceeds and exercising "total control and total discretion over the investment of the death benefits" without consulting her (Doc. 18). Among the fiduciary obligations she claims Prudential owed to her was a duty to make full disclosure of all the facts relating to the investment of the death benefits that were due and payable to her under the policy. Plaintiff claims that Prudential failed to disclose pertinent information including the identity of the

account and the types of investments it made, the risks associated with those investments, and most importantly the earnings generated by the funds that Prudential retained. Prudential meanwhile, disputes the existence of a fiduciary relationship between itself and the insured.

It is well settled in Illinois that a fiduciary relationship does not exist between an insurer and insured. *Martin v. State Farm Mut. Auto. Ins. Co.*, 348 Ill. App. 3d 846, 851–52 (Ill. App. Ct. 2004); *Fichtel v. Board of Directors of River Shore of Naperville Condominium Ass'n.*, 389 Ill. App. 3d 951, 962 (Ill. App. Ct. 2009). Nevertheless, plaintiff contends that Prudential owes her a fiduciary duty because it acted like a trustee through the management of her Alliance Account. In support of this position, Plaintiff relies on *Commodity Futures Trading Comm'n v. Heritage Capitol Advisory Servs.*, Ltd. 823 F.2d 171, 173 (7th Cir. 1987) to argue that Prudential managed her funds like a "broker." Describing Prudential as a "broker" and the insurance proceeds as an "investment" mischaracterizes the relationship between the parties. Prudential is not a "broker" or manager of funds but merely owed the plaintiff the insurance proceeds of which she was entitled. Prudential discharged this obligation pursuant to contract when it created the Alliance Account that was earning interest and immediately allowed her to withdraw all the funds.

Plaintiff also relies on *Pegram v. Herdich*, 530 U.S. 211 (2000) in an attempt to convince this Court that Prudential's actions resembled those of a trustee. In that case, the Supreme Court stated that "trustees buy, sell, and lease investment property, lend and borrow, and do other things to conserve and nurture assets." *Id*.

at 231.  This case is inapposite, however, as the defendant was not charged with "conserv[ing] and nurtur[ing] [the plaintiff's] assets." *Id.*  It simply set up an account that allowed the plaintiff to access the money.  Upon creating the account, Prudential no longer controlled how the money should be paid out to the plaintiff.  Furthermore, plaintiff misinterprets the Supreme Court's definition of a trustee.  While it is true that "the common law trustee's most defining concern…has been the payment of money in the interest of the beneficiary" applying to an insurer/insured relationship would transform an insurance company into a trustee in every situation in which it pays benefits.  *Id.* at 231.  This, of course, is not the case and as already noted, a fiduciary relationship does not generally exist between an insurer and insured.  *See Martin v. State Farm Mut. Auto. Ins. Co.,* 348 Ill. App. 3d 846, 851–52 (Ill. App. Ct. 2004); *Fichtel v. Board of Directors of River Shore of Naperville Condominium Ass'n.,* 389 Ill. App. 3d 951, 962 (Ill. App. Ct. 2009).  As a result, no fiduciary duty attaches and the Court grants the motion to dismiss as to Counts III and IV.

### IV. Conclusion

Accordingly, the Court **GRANTS** defendants' motion to dismiss Prudential's motion to dismiss (Doc. 27).  The Court **Dismisses with prejudice** the amended complaint.  Further, the Court Directs the Clerk of the Court to enter judgement reflecting same.

**IT IS SO ORDERED.**

Signed this 28th day of November, 2011.

David R. Herndon
2011.11.28
10:52:49 -06'00'

**Chief Judge**
**United States District Court**